Andrew McClain, J.,
delivered the opinion of the Court.
The present suit relates to seventy-six acres of land, and is to be determined chiefly by the effect to be given to an instrument of writing which is quite informal, signed by Philip Smart and his wife, Abijah Smart, and purporting to be executed by them to Samuel Caraway and his wife, Mary, the defendant. This instrument is in these words, (omitting the boundaries,) viz:
*246 “This indenture, made this the 28th of December, in the year of our Lord, 1861, between Philip Smart and his wife, Abijah Smart, and Samuel Caraway and his wife, Mary Caraway, all of the County of Rutherford and State of Tennessee, witnesseth, that, for and in consideration of the love and affection we have for the said Samuel C. Caraway and his wife, Mary Caraway, and Sarah Ann Caraway, John B. Caraway, Martha Caraway, Philip M. Caraway and Nancy Caraway, our grandchildren, have this day given and bequeathed to the said Samuel C. Caraway and his wife, Mary Caraway, a certain tract or parcel of land, situated and lying in the County of Rutherford and District No. 1, lying on the north side of Stone’s River, beginning at a cedar, and containing seventy-six acres, be the same more or less: to have and to hold said land and premises, for their benefit, all tbe right, title and interest we have to the same, forever — which we warrant and defend to them, their heirs and assigns. And the said Samuel C. Caraway and his wife, Mary Caraway, on their part, doth obligate themselves to support and maintain the said Philip Smart and his wife/ Abijah Smart, with kindness and respect, as becomes old people of their age, and will not debar them from any right or privilege on said land, and promise, so long as they both shall live; and if the said Samuel C. Caraway and his wife, Mary Caraway, doth faithfully and kindly comply with the above obligation, to be in full force and virtue; otherwise, to be null and void, and of no force at all.
*247 “In testimony whereof, we have set our hands and seals, this the day and date above written.
“Philip Smart, [Seal.J
“ Abijah Smaet, [Seal.]
“Test: RobeRt M. Smith,
“Elijah Creel.”
This instrument, it appears, was not registered in the life time of Philip or his wife, Abijah; but it is alleged that it was registered afterwards.
Samuel Caraway, and Philip Smart and his wife, Abijah Smart, all died in the year 1863 — their deaths all occurring within a few months of each other. Philip Smart died in May, and Samuel Caraway and Abijah Smart both in the month of July.
Defendant, Mary Caraway, the widow of Samuel, became the administratrix of her deceased husband’s estate. She afterwards made application to the County Court for dower in the seventy-six acres of land referred to in this instrument of writing, and also, as administratrix, filed her petition for sale of the balance of the land, for payment of the debts of her intestate.
Samuel Caraway’s first wife was the daughter of Philip Smart. By this marriage she had children, who are the grandchildren. mentioned in the writing, and are a portion of the complainants in this suit. This wife having died, Samuel Caraway married the defendant, Mary. This bill is filed by these children of Samuel Caraway by his first marriage, and by the children of Philip Smart, praying an injunction of the proceedings by the defendant, Mary, in the County Court, in reference to this seventy-six acres of land; and praying that *248 this instrument be declared a nullity, and that the title to this land be declared to be in complainants as the heirs at law of Philip Smart.
The first question to be diposed of is, whether it be a deed or a will.
We think this question is of easy solution. The instrument plainly shows upon its face that it ■ was intended to go into ■ effect in presentí, and not in futuro.
One of the stipulations in the deed is, that Caraway and wife are to support and maintain Smart and wife, with kindness and respect, as becomes old people of their age, and will not debar them from any right or privilege on said land, etc.
This language plainly signifies that the instrument was to take effect in presentí; for if no effect was to be given to it till after his death, there would have been no necessity for a stipulation that he was to be debarred of no privilege on the land.
It is insisted that it cannot have effect as a deed, for the reason that there is no consideration to support it; that Caraway and wife were not related by consanguinity; and therefore, it is not effectual, even as a covenant to stand seized to the use of Caraway and wife.
It is further insisted that, as a deed of bargain and sale, inasmuch as Caraway and wife did not sign the deed, the covenants of the deed do not bind them; and there is therefore no mutuality and consanguinity— no valuable consideration to support it.
The signature of Abijah Smart to the deed (she being a femme couverte,) does not affect the instrument It *249 does not appear she had any separate estate or other interest in the land.
One of the stipulations in the deed is, as we have seen, that Caraway and wife will support and maintain the said Philip Smart and his wife, with kindness and respect, as becomes old people of their age, and will not debar them, etc., (as before recited;) and if the said Caraway and wife shall faithfully and kindly comply with the above obligation, then it is to be of no force at all.
It is not controverted that Caraway and wife accepted the deed and the estate therein conveyed. They entered upon the performance of their covenant set forth in the deed; and the controversy relates to the fidelity with which they performed it.
In Coke upon Lyttleton, vol. 2, pp. 271-2, the following case is stated:
An indenture of lease is executed between A and B; but on the face of the indenture the devise is made to B, jointly with D. But B does not sign the indenture; and one of the covenants of the indenture is, that D and B will pay to A twenty pounds, if certain conditions mentioned in the indenture are not performed. A instituted an action on this indenture against D only. D pleaded in abatement of the suit, that B had not been joined in the action. The plaintiff replied that B had not sealed and delivered the indenture; and thereupon his suit was good against D only. It was held that, inasmuch as B had agreed to the lease which was made by the indenture, he was chargeable by the indenture with the twenty pounds.
*250 - • The 'doctrine here laid down was fully approved and adopted by the Supreme Court of New Jersey, in the case of Fiñly vs. Simpson — 2 Zarbriskin’s R., vol. 2, 311. In that case, Simpson being indebted to one Whitaker, executed á mortgage on a tract of land, and continued in possession of the land. He afterwards, by indenture of bargain and salé between himself of the one part, and Finly of the other part, in consideration óf a certain sum of money paid to hiin by Finly, and in consideration that Finly, by the stipulations as expressed on the face of the indenture, to pay the debt of Simpson to Whitaker, to secure the payment of which the mortgage had been executed, conveyed the same land to Finly; but Finly failed to sign the indenture. Siinpson paid the debt to Whitaker, and then instituted his action against Finly upon the covenant expressed in the indenture — Finly having accepted the deed and the estate therein conveyed. The Chief Justice delivering the opinion of the Court said:
“The only inquiry is, whether an indenture of bargain and sale purporting to be inter partes, by which an estate is conveyed to the granteé, if thé grantee accept the deed and the estate therein conveyed, thoügh the indenture be not sealed and delivered by him, is not his deed as well as the deed of the grantor.”
The affirmation of this proposition was held to be the law. We think the principle here enunciated is the law of the present case; ánd the grantees having accepted the deed and the estate therein conveyed, the deed is not void for want of mutuality of the agree-, ment.
*251 It only remains to consider whether the condition expressed in the deed has been performed.
The evidence introduced by the complainants to show that it has not been performed, consists chiefly of the declarations of Philip Smart and wife, when neither Caraway or his wife were present. This testimony was excepted- to; and we do not perceive upon what principle its competency can be maintained.
The complainants stand in a relation to defendant similar to that in which Philip Smart himself would have stood, had he been complainant in their stead. Excluding this testimony, the preponderance of evidence is clearly in favor of defendant upon the point of performance of the condition subsequent. Taking this view of the subject, it follows that the decree of the Chancellor must be reversed, and the bill dismissed.
The bill is dismissed, without prejudice as to the children of Caraway who are complainants,